FILED'08 SEP 18 11:22USDC·ORP

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,            )
                                     )
                    Plaintiff,       )        Criminal Case No. 08-99-KI
                                     )
        vs.                          )        OPINION AND ORDER
                                     )
DAVID WINSOR,                        )
                                     )
                    Defendant.       )
                                     )
_____    )

        Karin J. Immergut
        United States Attorney
        District of Oregon
        Gregory R. Nyhus
        Assistant United States Attorney
        1000 S. W. Third Avenue, Suite 600
        Portland, Oregon  97204-2902

                Attorneys for Plaintiff

        Philip A. Lewis
        111 S. W. Fifth Avenue, Suite 1650
        Portland, Oregon  97204

                Attorney for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Defendant David Winsor is charged with two counts of receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Before the court is defendant's Motion to Suppress Fruits of November 21, 2005 Search of Defendant's Residence (#11).

## BACKGROUND

The affiant began his affidavit with the statutory definition of "child pornography," which includes computer-generated images or pictures. Additionally, he stated that to be included in the definition the computer-generated image must be "indistinguishable from that of a minor engaging in sexually explicit conduct." Attach. to Def.'s Mot. to Suppress, Aff. ¶1 n.1 (quoting 18 U.S.C. § 2256(8)). He did not, however, give the definition for "sexually explicit conduct" as set forth in the statute.

In the affidavit, the affiant described two undercover investigations, one involving Regpay.com and one involving a collection of websites referred to as Pedo Land.

With regard to the first undercover investigation, federal agents made undercover purchases of subscriptions to websites offering child pornography, through a payment processor called Regpay.com. After obtaining search warrants, federal agents obtained subscriber information from a computer database operated by Regpay.com. On the database was "subscriber information for several thousand customer transactions involving hundreds of commercial websites–over forty of which contained child pornography." Id. at ¶ 11. The

database "included the websites the subject subscribed to, the date of subscription, the subjects [sic] name, address, telephone, credit card number and e-mail address." Id. at ¶ 12.

The relevant assertions in the challenged affidavit related to the Regpay.com investigation are as follows:

> 44.   Based on the Regpay.com investigation as detailed above in paragraphs 11 and 12, I received a lead from ICE C3 indicating that David Winsor subscribed to the Internet website, www.darkfeeling.com.  In July of 2003 an ICE agent acting in an undercover capacity purchased a membership subscription to www.darkfeeling.com for $57.90.  The charge was billed to the undercover credit card as ISERVE.  As a result of the purchase, it was determined that the site contained child pornography as defined in 18 USC § 2256.

Id. at ¶ 44.

The affiant further asserted that he learned through the Regpay.com investigation that defendant had subscribed to www.darkfeeling.com on May 2, 2003, and paid with his Visa credit card, and gave his address, telephone and e-mail address.  In addition, after obtaining defendant's bank records, the affiant asserted he learned defendant's credit card had been charged $57.90 on May 2, 2003.

As for the second undercover investigation, the affiant reported federal agents had executed a search warrant at Verio, Inc., the company hosting the websites www.myillegalsite.net, www.myillegalwebsite.com, and www.myillegalstorage.info, and ten other websites that "appeared to be related, in that they featured the same content[.]" Id. at ¶ 37. Verio is a "large web hosting company." Id. at ¶ 19.  The websites advertised the sale of "explicit images of sex with minors.  The title page of the website stated, 'Free-Preview-Pedo Land 2004 (updated 06/03/2004-Real Children Porno Pay Site-CHILD FUCK!  ABSOLUTELY ILLEGAL!!!'" Id. at ¶ 15.  The front page of the website also contained images of boys and girls

Page 3 - OPINION AND ORDER

engaged in sexual acts with adults, and at least two of the images were victims previously identified through a law enforcement investigation. The agents referred to the investigation as the Pedo Land investigation.

Senior Special Agent Michelle Dowling, acting undercover, became a member of www.myillegalstorage.info by paying $80. When she accessed the members-only website, at http://205.209.184.120, she found 7,496 images, 300 video files, and 28 ZIP archive files for download; 96 images were of previously identified victims. She viewed boys and girls engaging in sexually explicit conduct with adult males.

Agent Dowling learned of two other websites that appeared to be related to the three above, http//erwt34.info and http://wf43tr43w.info. She accessed http://erwt34.info and viewed sixteen images of nude girls, and text stating, "Pedo Land Children Porno Club!" She joined, using a similar payment link as the www.myillegalstorage.info, by paying $79.95 with her credit card. After entering her information, the website informed her, "It's not the end of the purchase. Now you need to email us if you want to join with Credit Card. bri79245@yahoo.com." Agent Dowling sent an e-mail to bri79245@yahoo.com. She received an e-mail from bri79245@yahoo.com with instructions to access http://orion-html-soft.net/order.html. From this website, she was required to pay with her credit card through PayPal. She received an e-mail from orion_sft@yahoo.com providing her with a login name, password and URLI for the members site. Pursuant to a summons, PayPal revealed that the orion_sft@yahoo.com account belongs to Alex Yarne.

A search warrant of Verio's records revealed information on subscribers to the websites. Additionally,

Page 4 - OPINION AND ORDER

43.   As the investigation progressed, ICE C3 discovered numerous other websites had been set up to replace or add to websites that had been taken down due to the investigation. ICE C3 served three additional search warrants to Verio Inc., leading to the discovery of 11 more payment sites and 23 advertising sites. Two of these sites are, Mavalise.com, an advertisement site and Sdfasdfdsa.com, a payment site.

47.   Upon receipt of a lead from ICE C3 based on the investigation described in paragraphs 13 - 43, I commenced an investigation which revealed that on May 3, 2005, an individual whose e-mail address is djwinsor@aol.com with a reported address of 4459 Golden Lane, Lake Oswego, Oregon 97035, who used credit card number:  419 . . .064 (Visa), subsequently identified as David J. Winsor did knowingly pay $79.95, using a computer to subscribe to a website offering child pornography for sale. Based on the investigation and my training and experience, there is probable cause to believe that David J. Winsor is a recipient of child pornography and that evidence of the receipt and possession of child pornography will be found at his residence located at 4459 Golden Lane, Lake Oswego, Oregon 97035.

Affidavit ¶ 43, 47 (Emphasis added.)

Agents analyzed the customer information at http://sdfasdfdsa.com and found that on May 3, 2005, Winsor provided his address, telephone, e-mail and credit card information.

PayPal provided information that Winsor paid $79.95 to Alex Yarne on May 3, 2005 through Winsor's PayPal account. US Bank, the credit card company that issued the credit card used, confirmed that PayPal charged Winsor's credit card $79.95, and the credit card charge shows the transaction as PAYPAL "ORIONSFT."

## LEGAL STANDARDS

A warrant must be supported by probable cause. The question is whether, viewing the totality of the circumstances, the judicial officer who issued the warrant had a substantial basis for finding that there was a "fair probability that contraband or evidence of a crime" would be found in the place searched. Illinois v. Gates, 462 U.S. 213, 238 (1983). The issuing court is

entitled to draw reasonable inferences about where evidence may be kept, "based on the nature of the evidence and the type of offense." United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986). In "borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." United States v. Terry, 911 F.2d 272, 275 (9th Cir. 1990).

Even if the warrant is based on insufficient probable cause, the evidence need not be suppressed if the officer relied in good faith on the validity of the warrant, and his reliance was objectively reasonable. United States v. Leon, 468 U.S. 897, 922 (1984).

## DISCUSSION

Defendant argues the affidavit is padded with irrelevant information and, when the padding is removed, there is insufficient information to support a conclusion that defendant had received or was in possession of child pornography. The affiant claimed defendant subscribed to two websites that offered child pornography, www.darkfeeling.com, and another not specifically named but part of the collection of websites referred to by the affiant as "Pedo Land."

Generally, an affidavit in support of a warrant to search a computer for child pornography believed to have been obtained via the internet should demonstrate the following three facts: "the site had illegal images, [the suspect] intended to have and wanted access to these images, and these images were almost certainly retrievable from his computer if he had ever received or downloaded them[.]" United States v. Gourde, 440 F.3d 1065, 1071 (9th Cir. 2006) (en banc).

I.    www.darkfeeling.com

With respect to www.darkfeeling.com, the affidavit is lacking the detail necessary to demonstrate the first fact—that "the site had illegal images[.]" Id. As defendant points out the affiant merely stated, "I received a lead from ICE C3 indicating that David Winsor subscribed to

Page 6 - OPINION AND ORDER

the Internet website, www.darkfeeling.com." Affidavit ¶ 44. Thereafter, an unnamed ICE agent purchased a membership subscription for $57.90, and was billed for it. The affiant then stated, "As a result of the purchase, it was determined that the site contained child pornography as defined in 18 USC § 2256." Id.

The Ninth Circuit has described several acceptable ways for an affiant to show that "the site had illegal images[.]" The "ideal course" is to provide copies of the alleged pornographic photographs for the magistrate to view, but failing to include such pictures is not "fatal to the warrant[.]" United States v. Smith, 795 F.2d 841, 847 (9th Cir. 1986). Alternatively, a magistrate may rely on an experienced officer's "factual descriptions of an image." United States v. Battershell, 457 F.3d 1048, 1053 (9th Cir. 2006) (officer described in his police report the images he had personally viewed and the report was appended to forensic investigator's affidavit);[1] New York v. P.J. Video, Inc., 475 U.S. 868, 874 n.5 (1986) ("reasonably specific affidavit describing the content of a film generally provides an adequate basis for the magistrate to determine whether there is probable cause to believe that the film is obscene, and whether a warrant authorizing the seizure of the film should issue"). Finally, absent any description of the images, a magistrate may rely on an experienced affiant's representation that the photographs he viewed meet the statute's criteria. Smith, 795 F.2d at 848 (magistrate could rely on statement of "experienced postal inspector that the photos depicted 'sexually explicit conduct' within the statute.").

---

[1]Indeed, the government conceded that a description of "a young female (8-10 YOA) naked in a bathtub" was "insufficient to establish probable cause that the photograph lasciviously exhibited the genitals or pubic area" of the minor, one of the statutory definitions for "sexually explicit conduct." Battershell, 457 F.3d at 1051.

Here, the affiant did not provide any photographs of the images alleged to constitute child pornography. Furthermore, the language of the affidavit is insufficient for the magistrate judge to find probable cause that www.darkfeelings.com contained child pornography. The affiant did not say who determined the site contained child pornography, or what led that individual to come to that conclusion. The affiant offered no description of the content of the website. If the magistrate judge inferred from the affidavit that the ICE agent viewed the site, the warrant lacks any detail about what expertise the ICE agent had in making such a determination such that the magistrate could rely on the agent's conclusion.

The lack of detail about www.darkfeeling.com or about the ICE agent is especially troubling in comparison to the affiant's discussion about the content of the Pedo Land websites, and the detailed information about the Pedo Land investigating agent's experience. As described above, the affiant included three full paragraphs detailing the contents of the Pedo Land websites. Additionally, the affiant explained several of the images were of children previously identified as victims. The affiant explained that Agent Dowling, who viewed the Pedo Land websites, has been an agent for four years, has received training in investigating child pornography matters, and has been involved with numerous child pornography investigations. The affiant explained that during Agent Dowling's year as an agent for the Cyber Crimes Center/Child Sexual Exploitation Unit she reviewed thousands of child pornography images.

In sum, the affiant failed to establish a fair probability that defendant's computer contained images of child pornography obtained from www.darkfeeling.com.

II.    Pedo Land Websites

As for the Pedo Land websites, as I noted above, the affiant provided a great deal of detail about what was contained on the sites, but provided very little detail about whether or how defendant accessed the websites containing child pornography.  In other words, the affidavit neglected to show defendant "intended to have and wanted access to" child pornography. Gourde, 440 F.3d at 1071.

The affiant simply stated that, based on a lead from the Pedo Land investigation, he learned defendant "subscribe[d] to a website offering child pornography for sale." Affidavit ¶ 47.  The affiant did not identify the website, or eliminate the possibility that someone accessing the website could use the website in a legal fashion.  More importantly, the affiant did not explain how subscribing to a website offering members the opportunity to buy child pornography, absent evidence that defendant made additional payments to do so, would give a magistrate the substantial basis to find with a "fair probability" that the individual actually received or downloaded any child pornography.  Subscribing to a website offering members the opportunity to purchase child pornography is one step removed from the facts in Gourde, which involved evidence that the suspect had subscribed to a website that allowed its members "unlimited access to images of child pornography[.]" Gourde, 440 F.3d at 1071.

Furthermore, the affiant did not identify the website to which defendant purportedly subscribed.  Instead, the affiant only provided information that defendant used a payment website, http://sdfasdfdsa.com.  The affidavit's only information about that payment website is that it was one of 11 payment sites revealed through a subsequent search warrant on Verio.  The affiant implied that http://sdfasdfdsa.com was a replacement website for one that had been shut

down due to the investigation.  The affiant, however, did not provide any information about

which websites used http://sdfasdfdsa.com to process payments, whether http://sdfasdfdsa.com

processed payments only for child pornography websites, or even that it processed payments for

any child pornography websites.  Unlike Gourde, the affidavit contains no information obtained

from http://sdfasdfdsa.com identifying the website to which defendant subscribed.  Id. at 1068

(Lancelot Security, the credit card processor, provided records showing Gourde subscribed to

Lolitagurls.com).

The only other pieces of evidence in the affidavit that may connect defendant to the Pedo

Land investigation is defendant's payment of $79.95, which went to Alex Yarne, and the fact that

his credit card reflected a charge to ORIONSFT.  As described above, Agent Dowling received

instructions to access "Pedo Land Children Porno Club" from orion_sft@yahoo.com, and that

account belongs to Alex Yarne.  The affiant gave no further information about Alex Yarne or

orion_sft@yahoo.com, other than a statement that orion_sft@yahoo.com is "linked to the sale of

commercial child pornography."  Affidavit ¶ 35.  This information does not constitute a

"substantial basis" for finding there was a "fair probability" that defendant's computer contained

images of child pornography.

III.    Good Faith Exception

"Evidence seized pursuant to a facially valid search warrant which later is held to be

invalid may nevertheless be admissible if officers conducting the search acted in good faith and

in reasonable reliance on the warrant."  United States v. Kow, 58 F.3d 423, 428 (9th Cir. 1995)

(citing Leon, 468 U.S. at 926).  The government has the burden to prove the officer's reliance

was objectively reasonable.  Id.  The question is "whether a reasonably well trained officer would

have known that the search was illegal despite the magistrate's authorization." United States v. Luong, 470 F.3d 898, 902 (9th Cir. 2006).

There are four instances when reliance is per se unreasonable: (i) when the affidavit contains deliberate or reckless misstatements; (ii) where the magistrate abandons his neutral judicial role; (iii) where the warrant is so facially deficient as to the place to be searched or the things to be seized that the officers cannot reasonably believe the warrant is valid; or (iv) where the affidavit is a "bare bones" affidavit "so lacking in evidence of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923.

Defendant claims the good faith exception does not apply. He argues that stripped of all its fat, the affidavit is a "bare bones affidavit" because it fails to contain facts about defendant's alleged access to child pornography. Instead, the affidavit contains multiple details about the investigations, the examination of business records, and the affiant's experience, making it appear as though the affidavit contains sufficient detail to establish probable cause.

I disagree. The affidavit establishes at least a colorable argument for probable cause, in that "thoughtful and competent judges" might disagree about the existence of probable cause. Luong, 470 F.3d at 903. Indeed, the details about defendant's receipt and possession of child pornography are more than "foundationless" expert testimony and "boilerplate recitations" found insufficient in United States v. Weber, 923 F.2d 1338, 1345-46 (9th Cir. 1990).

Specifically, the defendant's payment of $79.95, which went to Alex Yarne, and the credit card charge to ORIONSFT, which Agent Dowling connected to the "Pedo Land Children Porno Club," set forth specific facts, and not simply conclusions, from which one could determine probable cause. Additionally, although the affiant provided insufficient details to

Page 11 - OPINION AND ORDER

provide probable cause about the content of www.darkfeeling.com, the ICE agent did purchase a subscription to the site for $57.90, the same amount billed to defendant, and determined the site contained child pornography.  These facts combined with the affiant's statements based on his training and experience that collectors of child pornography store images on their hard drives, diskettes, and CD-ROMs, such that the images are retained for significant or indefinite periods of time, render the affidavit more than a "bare bones" affidavit.  Furthermore, an officer's consultation with a government attorney is of "significant importance to a finding of good faith." United States v. Brown, 951 F.2d 999, 1005 (9th Cir. 1991).  The affiant consulted with an Assistant United States Attorney prior to submitting the affidavit to the magistrate.  In sum, "official belief" in the existence of probable cause was not "entirely unreasonable." Leon, 468 U.S. at 923.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress Fruits of November 21, 2005 Search of Defendant's Residence (#11) is denied.

IT IS SO ORDERED.

Dated this _____ day of September, 2008

_____
Garr M. King
United States District Judge