UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


**UNITED STATES OF AMERICA**,                    Case No. 3:08-CR-00099-KI

                    Plaintiff,

            v.                                    OPINION AND ORDER ON MOTION TO
                                                  SUPPRESS STATEMENTS

**DAVID WINSOR**,

                    Defendant.


        S. Amanda Marshall
        United States Attorney
        District of Oregon
        Jane H. Shoemaker
        Assistant United States Attorney
        1000 SW Third Avenue, Suite 600
        Portland, Oregon  97204-2902

            Attorneys for Plaintiff


OPINION AND ORDER ON MOTION TO SUPPRESS STATEMENTS - Page 1

Michael R. Levine
1001 SW Fifth Avenue, Suite 1414
Portland, Oregon  97204

   Attorney for Defendant

  Defendant David Winsor has been indicted on one count of receipt of child pornography (identifying five separate files) and one count of possession (identifying five different files from those set forth in the first count).  Pending before me is his Motion to Suppress Statements [106]. For the following reasons, I deny the motion.

## FACTS

  The following facts were adduced at an evidentiary hearing:

  On November 21, 2005, at about 6:30 a.m., officers executed a search warrant on the defendant's home upon information that he had purchased child pornography.  Three officers from the Lake Oswego Police Department and five agents with ICE Homeland Security Investigations ("HSI") opened the unlocked front gate, rang the doorbell, knocked on the front door, and then, finding the front door unlocked, entered the residence.  While entering, they yelled "police!" and "search warrant!"  They were dressed in protective body armor bearing police markings and had their guns drawn.  The defendant indicated from the top of the stairs that he was present and he came down wearing a robe with his hands up.  The officers undertook a protective sweep of the residence and encountered a woman, who was in a state of undress, but nobody else.  The woman, escorted by a female officer, was allowed to get dressed.  When the officers had completed the protective sweep, they holstered their weapons.  Special Agent James Cole, an HSI agent, and Detective Robert Lee, with the Lake Oswego Police Department, directed the defendant and his girlfriend to the dining room table.  Agent Cole read the search

OPINION AND ORDER ON MOTION TO SUPPRESS STATEMENTS - Page 2

warrant to them in Detective Lee's presence.  The other officers began to execute the search

warrant.

Both Agent Cole and Detective Lee, as well as the defendant, testified that after Agent

Cole read the search warrant to the defendant and his girlfriend, he told the defendant that he was

not under arrest and that he was free to leave, but that if he left he would not be allowed to return

to the residence until the officers finished executing the search warrant.  The defendant testified

that he did not "really feel that was a viable option" while "surrounded by police."  Tr. 82.

Agent Cole then informed the defendant that he and Detective Lee would like to "have a

conversation" with the defendant.  Tr. 77.  The defendant suggested the interview could take

place at the dining room table.  The officers responded, "No, no.  This won't do," and that they

"wanted to be alone."  Tr. 78, 85.  They suggested the Lake Oswego Police Department.  Agent

Cole testified that he explained the defendant did not have to accompany him to the police

department or talk with him at all.  The defendant testified that nobody told him he was required

to talk to the police, but that nobody told him he did not have to talk to them, either.  The

defendant was not confronted with any evidence of guilt, other than what Agent Cole had read to

him from the search warrant.  The defendant agreed to go to the police department.  He described

feeling "pretty intimidated at the time . . . [and that he] didn't really feel [he] had much of a

choice."  Tr. 78.  The defendant believes "there were words to [the] effect" that he would not be

arrested if he cooperated, but he didn't "recall the exact words."  Id.  He testified, "It seemed

clearly communicated to me that if I were cooperative, then I wouldn't wind up in custody."

Tr. 79.  No one told him he would be arrested if he did not cooperate.  However, "a motivation to

conduct the interview" was to avoid arrest.  Tr. 96.

OPINION AND ORDER ON MOTION TO SUPPRESS STATEMENTS - Page 3

An officer accompanied the defendant to his bedroom so that he could get dressed.  Agent

Cole and Detective Lee transported the defendant in an unmarked police car to the Lake Oswego

Police Department; neither officer placed a hand on the defendant to guide him to the car.  The

defendant testified that he did not feel he was under arrest, but he felt he was "in some type of

custody" and that he understood if he cooperated he would not be arrested. Tr. 77.  He was not

handcuffed at any time, and he brought along a soft drink from his own refrigerator.  The other

officers stayed behind to execute the search warrant.  The defendant's girlfriend stayed at the

residence as well.

At the police department, in the detective's cubicle, Detective Lee asked the defendant if

he wanted any coffee, which the defendant declined.  Agent Cole then reiterated to the defendant

that he was not under arrest but explained that because they were in a police station, in an

abundance of caution, he wanted to read him the Miranda warnings printed on the HSI form.

The defendant does not remember Agent Cole reiterating that he was not under arrest, but he

does not deny that Agent Cole may have said those words.  The form contained the following

explanation:

<u>STATEMENT OF RIGHTS</u>

Before we ask you any questions, it is my duty to advise you of your rights.
You have the right to remain silent.

Anything you say can be used against you in court, or other proceedings.

You have the right to consult an attorney before making any statement or answering any
questions.

You have the right to have an attorney present with you during questioning.

If you cannot afford an attorney, one will be appointed for you before any questioning, if

you wish.

If you decide to answer questions now, you still have the right to stop the questioning at any time or to stop the questioning for the purpose of consulting an attorney.

Tr. 19-20; Gov't. Ex. 1.

The defendant signed the waiver, which read:

<u>WAIVER</u>

I have had the above statement of my rights read and explained to me and I fully understand these rights.  I waive them freely and voluntarily, without threat or intimidation, and without any promise of reward or immunity.  I was taken into custody at <u>11-21-05</u> (time) on <u>7:20 a.m.</u> (date) and have signed this document at <u>11-21-05</u> (time) on <u>7:29 a.m.</u> (date).

Tr. 22; Gov't. Ex. 1 (emphasis represents handwritten entries; the transposed dates and times are

reflected as in the original).  Notwithstanding the sentence about being taken into custody, it was

Agent Cole's position that the defendant was always free to leave.

The officers engaged the defendant in casual conversation, but when they began to ask

pointed questions about his activities, the defendant said something like, "I think I'd like an

attorney . . . . Shouldn't I have an attorney here?"  <u>See</u> Tr. 20 (Agent Cole testified the defendant

"asked if he should obtain an attorney"); Tr. 64 (Detective Lee testified that the defendant never

said the words "attorney" or "lawyer"); Tr. 79 (the defendant testified that he said, "Well, I think

I need an attorney . . . . Do I need an attorney here for this?"); Tr. 87, 88 (the defendant also

repeatedly testified that he said, "I think I'd like an attorney . . . . Well, shouldn't I have an

attorney here?").

Agent Cole testified that the defendant made these statements before signing the waiver.

The defendant testified he made these statements after signing the waiver.  Without finding one

recollection more likely than the other, and simply to resolve this motion, I accept the defendant's recollection of the order of events.

Agent Cole told the defendant that he could not give the defendant legal advice, but that the government would like to hear the defendant's side of the story and that an interview was his chance to "explain, refute, or mitigate" the allegations. Tr. 21, 41. Agent Cole testified that the defendant asked if talking to the officers would help him. Agent Cole responded that the prosecuting official would make that determination, but that in his experience cooperators received consideration. Agent Cole told the defendant that if he were cooperative, forthright, and honest, Agent Cole would tell the prosecuting official and include it in his report.

Like Agent Cole's recollection, the defendant testified Agent Cole responded to the defendant's statement and question, "I think I'd like an attorney . . . . Shouldn't I get an attorney?" by explaining he could not give the defendant legal advice. The defendant testified that he continued to answer the officers' questions because he "didn't really understand what my options were at that point. I didn't really understand I really had the option to say, 'No more interview. Let's stop. Take me home.' I didn't really feel that was an option." Tr. 90. The defendant did not remember Agent Cole's statements about cooperation being made at the police station, but he remembered before the interview, perhaps back at the house, Agent Cole telling him about the benefits of cooperating.

The defendant agreed to be interviewed and he made inculpatory statements over the course of an hour. Agent Cole described the interview as cordial. Detective Lee described the interview as low key. The defendant testified he felt he was not free to go and that, if he had jumped up, he would have been stopped from leaving, but he agreed the interview was friendly,

OPINION AND ORDER ON MOTION TO SUPPRESS STATEMENTS - Page 6

cooperative, polite and low key.  At the end of the interview, the officers returned him home.

The defendant testified that after the interview, before the agents finished the search and left the

residence, Agent Cole told the defendant, "The only reason you're going to get to stay home is

because you cooperated with us."  Tr. 95.

The interview was not recorded because it was HSI policy not to record interviews

without approval from the special agent in charge.  Detective Lee testified that he has on

occasion recorded interviews, but did not do so here; this was an HSI investigation.

## DISCUSSION

The defendant argues that his waiver of his Miranda rights was not voluntary.

Additionally, he argues the officers did not honor his request for an attorney, but continued to

question him.

The government responds that (1) the defendant was not in custody, so he had no

Miranda rights; (2) his statements were voluntary; and (3) the statement and question "I think I'd

like an attorney . . . . Shouldn't I get an attorney" are not an invocation of his rights.

I.      Whether the Defendant Was In Custody

The government points out that the first inquiry is whether the defendant was in custody.

If not, the officers had no obligation to inform the defendant of any Miranda rights.  See Miranda

v. Arizona, 384 U.S. 436, 444 (1966) (must be advised when "taken into custody or otherwise

deprived of his freedom of action in any significant way").

A defendant is in custody when "a reasonable person in such circumstances would

conclude after brief questioning [that] he or she would not be free to leave."  United States v.

Hayden, 260 F.3d 1062, 1066 (9th Cir. 2001).  The determination is based on the totality of the

circumstances.  Factors to be considered in the analysis include "(1) the language used to

summon the individual; (2) the extent to which the defendant is confronted with evidence of

guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and

(5) the degree of pressure applied to detain the individual."  Id.

       Here, the officers told the defendant he was not under arrest and that he was free to leave

the house.  Their firearms were holstered after they conducted the protective sweep of the

residence.  Other than reading the search warrant, they did not confront him with any evidence of

guilt.  Agent Cole asked the defendant to come to the police department for an interview.

Although the defendant suggested talking at the dining room table, he did not object to going to

the police station.  The officers did not threaten the defendant and he was allowed to bring his

own soft drink.  The defendant was transported in an unmarked policy car.  The interview

occurred in the detective's office rather than in an "interrogation room."  Detective Lee offered

the defendant coffee, the interview concluded in about one hour, he was never handcuffed or

restrained, never placed in a cell, and the officers returned him home right after the interview

concluded.  See United States v. Crawford, 372 F.3d 1048, 1061 (9th Cir. 2004) (one-hour

interview not custodial when the defendant agreed to accompany police to the FBI office; in

addition, what happened at defendant's home did not transform the later questioning into a

custodial interrogation); United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir. 1985) (not

custodial situation if free to leave); Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (defendant

allowed to leave police station "without hindrance").  Under the totality of the circumstances, the

defendant was not in custody.

       The defendant emphasizes the fact that "an officer cannot negate a custodial situation

OPINION AND ORDER ON MOTION TO SUPPRESS STATEMENTS - Page 8

simply by telling a suspect that he is not under arrest, but the defendant does not address the fact that such a statement is, nevertheless, a "factor in our totality of the circumstances analysis." United States v. Bravo, 295 F.3d 1002, 1011 (9th Cir. 2002) (statement that handcuffs only temporary "helped negate the handcuffs' aggravating influence and suggest mere detention, not arrest"); cf. United States v. Lee, 699 F.2d 466, 468 (1982) (per curiam) (arrest even though defendant told free to leave because he was confronted with evidence of guilt without Miranda warnings).

The defendant suggests that the fact that the officers read him his Miranda warnings is an indication he was in custody, and he points to the language in the Miranda form indicating the defendant "was taken into custody at 11/21/05 on 7:20 a.m." Tr. 22. I accept Agent Cole's testimony that he read the defendant his Miranda warnings in an abundance of caution. In fact, as I describe below, questioning in a police station, depending on other factors, can result in a finding of custody. Agent Cole was being careful and alerting the defendant to his rights. In addition, I also accept Agent Cole's testimony that he was not taking the defendant into custody, even though he wrote in the date and time of the questioning on a pre-printed form, which used the words "taken into custody."

The defendant also argues that he did not consent to leave his home in order to be questioned at the police station. Citing cases describing factors to determine whether statements were made voluntarily and whether consent to search was voluntary, the defendant suggests that he did not voluntarily accompany the officers to the police station and, as a result, his statements must be suppressed. See United States v. Harrison, 34 F.3d 886, 892 (9th Cir. 1994) (court commented that "subtle psychological coercion can effectively overbear a suspect's free will"

OPINION AND ORDER ON MOTION TO SUPPRESS STATEMENTS - Page 9

and finding officer's suggestion that remaining silent may result in harsher treatment rendered defendant's statements involuntary); United States v. Page, 302 F.2d 81 (9th Cir. 1962) (describing factors to evaluate whether consent to search was given).

As an initial matter, transporting a defendant to the police station without his consent speaks to the question of whether he was in custody and does not automatically require suppression of statements.  Only if he was in custody, without a valid Miranda waiver, would his statements be susceptible to suppression.  Thus, even if I found the defendant's trip to the police station non-consensual, this fact alone would not require suppression of his statements.

Nevertheless, the decision to question the defendant at the police station is a factor that may weigh in favor of a finding of custody.  The officers took the defendant to the police department in the police car and the defendant was reliant on them to take him home afterward. See  Hayes v. Florida, 470 U.S. 811, 816 (1985) (line between investigatory detention and arrest is crossed when police transport suspect to police station without consent and fingerprint him); Gonzalez v. City of Peoria, 722 F.2d 468, 477 (9th Cir. 1983) (defendant is arrested when transported to police station and placed in cell or interrogation room even if the purpose of the seizure is investigatory rather than accusatory).

Here, however, the defendant voluntarily accompanied the officers to the Lake Oswego Police Department.  Although the defendant described feeling "pretty intimidated at the time . . . [and that he] didn't really feel [he] had much of a choice" to go the police station, he also confirmed Agent Cole's and Detective Lee's testimony that he was told almost immediately that he was free to leave and was not under arrest.  Tr. 78.  The defendant believes "there were words to [the] effect" that he would not be arrested if he cooperated, but he didn't "recall the exact

OPINION AND ORDER ON MOTION TO SUPPRESS STATEMENTS - Page 10

words." Id.  He testified, "It seemed clearly communicated to me that if I were cooperative, then I wouldn't wind up in custody," Tr. 79, and that "I was given that understanding, that I could–that I would probably be in custody if I did not cooperate at some point in time." Tr. 95. His testimony on this subject is ambiguous.  He conceded no one told him he would be arrested if he did not cooperate.  He also testified neither officer told him he had to talk to them.  Agent Cole specifically testified he told the defendant he did not have to accompany the officers to the police department or talk with them at all.  The defendant never indicated he did not wish to speak with the officers, and instead suggested the interview take place at the dining room table. When the officers explained the police station would allow more privacy, the defendant voluntarily accompanied them.  No weapons were drawn and neither officer placed a hand on the defendant to escort him to the car.  He was not coerced in any way.  The circumstances the defendant describes are very different from those described in Hayes, 470 U.S. at 812, in which, when the defendant "expressed reluctance voluntarily to accompany [officers] to the station for fingerprinting, one of the investigators explained that they would therefore arrest him."  In that case, the defendant agreed to go to the station rather than be arrested and the Court concluded the defendant was in custody.

In sum, given all of the circumstances, including the fact that the defendant did not object to going to the police department for the interview, that he admitted he was told he could leave the house and was not under arrest, that the interview lasted about an hour, and that he was never handcuffed or placed in a cell or interrogation room, I conclude he was not in custody.

II.    Voluntariness

Even if I found the officers engaged in a custodial interrogation of the defendant, I would

OPINION AND ORDER ON MOTION TO SUPPRESS STATEMENTS - Page 11

conclude any statements he made were voluntary.[1]

A valid waiver of Miranda rights must be voluntary, knowing, and intelligent. United States v. Bautista-Avila, 6 F.3d 1360, 1365 (9th Cir. 1993). The prosecution must prove that "the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it.'" United States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). When considering whether a waiver is voluntary, a court must consider the totality of the circumstances, including the background, experience, conduct, mental capacity, age, and language difficulties of the defendant. United States v. Garibay, 143 F.3d 534, 536,538 (9th Cir. 1998); United States v. Bernard S., 795 F.2d 749, 751 (9th Cir. 1986). The government must prove by a preponderance of the evidence that a suspect validly waived his Miranda rights. Colorado v. Connelly, 479 U.S. 157, 168 (1986).

The defendant's initial argument, which it appears he has since abandoned, was that Agent Cole coerced statements by suggesting cooperation could benefit the defendant. To the extent he may still be making that argument, I reject it. "An interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect." United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988); see also United States v. Harrison, 34 F.3d 886, 891 (9th Cir. 1994) ("speculation that cooperation will benefit the defendant or even promises to recommend leniency are not sufficiently compelling to overbear a defendant's will").

---

[1]The defendant asks that I not consider Agent Cole's report, admitted as Exhibit 2. I rely only on the transcript from the hearing, without ruling on defendant's hearsay and relevance objections.

OPINION AND ORDER ON MOTION TO SUPPRESS STATEMENTS - Page 12

The defendant now argues that Agent Cole and Detective Lee strongly implied that if he cooperated and accompanied them to the police station, he would not be arrested.  However, both Agent Cole and Detective Lee, as well as the defendant, testified that after Agent Cole read the search warrant to the defendant and his girlfriend, he told the defendant he was not under arrest and he was free to leave.  Furthermore, Agent Cole testified that he explained the defendant did not have to accompany them to the police department or talk with them at all.  The defendant testified that nobody told him he was required to talk to the police.  As I indicated above, his testimony that "there were words to [the] effect" that he would not be arrested if he cooperated, but he didn't "recall the exact words," and that, "[i]t seemed clearly communicated to me that if I were cooperative, then I wouldn't wind up in custody," is ambiguous.  Tr. 78-79.  No one told him he would be arrested if he did not cooperate.  The defendant's clearest recollection of Agent Cole connecting the defendant's cooperation with a decision not to arrest him came after the officers had delivered the defendant home, and after he had already waived his <u>Miranda</u> rights and made inculpatory statements.  Tr. 95 (Agent Cole told him, after returning defendant home, "The only reason you're going to get to stay home is because you cooperated with us.").  In fact, the defendant did not testify that either Agent Cole or Detective Lee made any statements connecting cooperation and arrest at the police station, contemporaneous with the defendant's decision to waive his <u>Miranda</u> rights.

The defendant suggests I can find evidence of a promise not to arrest by the fact that the defendant was, in fact, not arrested after he made the statements.  However, the evidence is equally supportive of Agent Cole's testimony that the defendant was always free to leave.  <u>See</u> <u>Crawford</u>, 372 F.3d at 1060 ("Being aware of the freedom to depart, and in fact departing after

questioning at a law enforcement office, suggest that the questioning was noncustodial.").

The defendant also argues that the officers' testimony is subject to question because: (1) statements were not recorded; (2) Agent Cole's and Detective Lee's testimony was contradictory at times; and (3) Judge Jones "found [in United States v. Freeman, 635 F. Supp. 2d 1205, 1209 (D. Or. 2009)] that Agent Cole should be disbelieved in part because his testimony and that of other agents contracted [sic] each other."  Agent Cole persuasively explained the HSI policy about not recording interviews, and Detective Lee's past experience of recording interviews is irrelevant as this was an HSI-led investigation.  Any discrepancies between Agent Cole's and Detective Lee's testimony are very limited and are simply not relevant to any issue in the case; in fact, I have largely relied on the defendant's own testimony in coming to the conclusion that he voluntarily waived his Miranda rights.  Finally, I am not persuaded that Agent Cole's testimony is subject to the same level of questioning as it was in Freeman.  Contrary to that case, he summarized his interactions with the defendant in a report, which conforms to his testimony, and his testimony does not conflict with Detective Lee's in any relevant way.

The defendant's waiver of his Miranda rights was voluntary.

III.    Invocation of Right to Counsel

The defendant argues that the officers failed to honor his invocation of his right to counsel.  He claims he asked for an attorney.

The defendant said something like, "I think I'd like an attorney . . . . Shouldn't I have an attorney here?"  See Tr. 79 (the defendant testified that he said, "Well, I think I need an attorney . . . . Do I need an attorney here for this?"); Tr. 87, 88 (the defendant repeatedly testified that he said, "I think I'd like an attorney . . . . Well, shouldn't I have an attorney here?").  As a result, the

OPINION AND ORDER ON MOTION TO SUPPRESS STATEMENTS - Page 14

defendant never "unambiguously request[ed]" an attorney.[2]  Davis v. United States, 512 U.S.

452, 458-59 (1994) ("Maybe I should talk to a lawyer" not a request for counsel); see also Clark

v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) (upholding Arizona court's determination that

defendant's statements "I think I would like to talk to a lawyer" and "should I be telling you, or

should I talk to an attorney?" were not requests for counsel), overruled on other grounds by

Lockyer v. Andrade, 538 U.S. 63 (2003); United States v. Ogbuehi, 18 F.3d 807, 813 (9th Cir.

1994) (finding "Do I need a lawyer?" not a request for an attorney).  The cases on which the

defendant rests involve unambiguous requests for an attorney.  See United States v. de la Jara,

973 F.2d 746, 750-51 (9th Cir. 1992) ("Can I call my lawyer?" and "I should call my lawyer"

were invocations); Robinson v. Borg, 918 F.2d 1287, 1393 (9th Cir. 1990) ("I have to get me a

good lawyer, man.  Can I make a phone call?"); Smith v. Endell, 860 F.2d 1528, 1529, 1531 (9th

Cir. 1988) ("Can I talk to a lawyer?"); Shedelbower v. Estelle, 885 F.2d 570, 571, 573 (9th Cir.

1989) (assuming "I think I should call an attorney" was a request for an attorney, and

characterizing it as a statement that defendant "wanted to call an attorney").

 The defendant's statements were simply not an invocation of the right to counsel.  In fact,

he testified that he never definitively said he wanted an attorney.  Although the defendant

testified that he did not know what his options were, the waiver form clearly explained that he

could stop the interview at any time.  His statements will not be suppressed.[3]

─────────────

 [2]The transcript does not support the defendant's assertion in his supplemental
memorandum that he said, "I'd like to have an attorney."  Def.'s Post-Hearing Mem. 9.

 [3] The government's alternative argument–that the defendant subsequently read the form
and waived his rights, which clarifies that the defendant waived his right to counsel–is not
supported by the defendant's testimony.  He testified that he waived his rights and then asked
whether he should get an attorney.  For purposes of this motion, I accept the defendant's

**CONCLUSION**

For the foregoing reasons, the defendant's Motion to Suppress Statements [106] is

denied.

IT IS SO ORDERED.

Dated this _____19th_____ day of April, 2012.


                        ___/s/ Garr M. King_____
                        Garr M. King
                        United States District Judge

---

testimony.  As a result, I do not consider this argument.